STATE v. TUCKER

[227 N.C. App. 627 (2013)]

━━━━━━━━━━

STATE OF NORTH CAROLINA
v.
DENNIS DWAYNE TUCKER

No. COA12-1068

Filed 4 June 2013

1. **Indictment and Information—amendment—embezzlement—relationship between defendant and victim**

The trial court did not err by allowing an amendment to an indictment for embezzlement where the amendment added that defendant truck driver was the agent of the victim, the company for which he worked, rather than just an employee. Although defendant argued that the amendment would prejudice his defense because it changed the nature of the relationship between defendant and the victim, the terms "employee" and "agent" are essentially interchangeable for purposes of the embezzlement statute.

2. **Embezzlement—duty to account doctrine—truck driver paid by customer in cash**

The trial court properly denied defendant's motion to dismiss an embezzlement prosecution against a truck driver working for a moving company where defendant contended that the court lacked territorial jurisdiction to adjudicate the charge. Defendant was paid for one delivery in cash in Nevada and used part of the money to buy an airplane ticket to North Carolina when his commercial

driver's license expired. While defendant turned in the paperwork, he never turned in the money collected in Nevada. Defendant had a pre-existing duty to account for the proceeds to the company in North Carolina and, under the duty to account doctrine, the State presented sufficient evidence that an essential component of the crime was committed in North Carolina.

**3.	Embezzlement—failure to instruct jury—territorial jurisdiction—legal rather than factual issue**

The trial court did not err in an embezzlement prosecution by not instructing the jury on the territorial jurisdiction issue where the argument involved a legal rather than a factual issue.

Appeal by defendant from judgment entered 1 March 2012 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 26 February 2013.

*Roy Cooper, Attorney General, by Robert K. Smith, Assistant Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Hannah Hall, Assistant Appellate Defender, for defendant-appellant.*

DAVIS, Judge.

Dennis Dwayne Tucker ("defendant") appeals his embezzlement conviction. After careful review, we find no error.

**Factual Background**

The State's evidence at trial tended to establish the following facts: Sometime prior to December 2010, defendant was hired by MBM Moving Systems, LLC ("MBM"), headquartered in Greensboro, North Carolina, to work as a long-distance truck driver. According to MBM's company policy, drivers are responsible for collecting payment upon delivery. When they receive the payment, they are supposed to use the company's FedEx account to send the payment, along with the paperwork associated with the move, to MBM headquarters. When a driver receives the payment in cash, the driver is required to convert the cash into a money order and then follow the established procedure for sending it in to MBM.

Under MBM's policy, drivers are not permitted to use funds derived from customer payments. MBM typically uses a system called Com Data to advance drivers money to pay for fuel, to make repairs, or to cover

emergencies. The company will sometimes use a corporate credit card for such purposes when funds cannot be transferred quickly enough through Com Data.

Defendant, after delivering a load in the state of Washington in early December 2010, picked up another load consisting of household goods belonging to Leah Plotkin ("Plotkin"), a customer of MBM. Defendant delivered these goods to Plotkin at her new address in Las Vegas, Nevada on 4 December 2010. Upon delivery, Plotkin paid defendant the outstanding balance for the move – $2,086.19 – in cash. Defendant then drove to Arizona to make another delivery. While he was in Arizona, defendant's commercial driver's license from Washington expired. For this reason, defendant purchased a plane ticket back to North Carolina – using some portion of the cash he received from Plotkin – and left the truck in Arizona.

Defendant eventually turned in the paperwork for the Plotkin move to MBM but never remitted the $2,086.19. Defendant stopped working for MBM in February 2011 and his "closeout statement" included an entry for "Missing Money" in the amount of $2,086.19. Matt Moran, MBM's vice president, contacted defendant several times in February and March 2011 in an attempt to resolve the issue. Moran, however, eventually lost contact with defendant and informed the police on 23 March 2011 that defendant had not returned the money.

Defendant was subsequently charged with embezzling the Plotkin funds. Prior to trial, the State moved to amend the indictment as described more fully below and, over defendant's objection, the trial court allowed the amendment. At the close of the State's evidence, defendant moved to dismiss the embezzlement charge on the ground that North Carolina lacked territorial jurisdiction over the offense. The trial court, after considering arguments from counsel, denied the motion.

Defendant then testified in his own defense, admitting that he had, in fact, used some of the Plotkin funds to purchase the airline ticket from Arizona to North Carolina. He claimed that although he had never been allowed by MBM management to use customer money before, he believed that, in this case, his supervisor had given him permission to use the money he had received from Plotkin. After testifying, defendant renewed his motion to dismiss for lack of territorial jurisdiction, and the trial court once again denied the motion.

The jury found defendant guilty of embezzlement. The trial court sentenced defendant to a presumptive range term of five to six months

imprisonment, with credit for one day already served. Defendant gave notice of appeal in open court.

## Analysis

### I. Amendment of the Indictment

Defendant contends that the trial court erred in allowing the State to amend the indictment for the embezzlement charge prior to trial, claiming that the amendment substantially altered the charge in violation of N.C. Gen. Stat. § 15A-923 (2011). Originally, the indictment provided that, at the time of the alleged embezzlement, "the defendant . . . was the employee of MBM Moving Systems, LLC . . . ." Just prior to jury selection, however, the State moved to amend the indictment to include the words "or agent" after "employee" so that the indictment would allege that defendant was an "employee or *agent* of MBM Moving Systems, LLC." Defendant objected, arguing that the amendment would prejudice his defense in that it would alter the nature of the relationship between defendant and MBM that the State would be attempting to establish at trial. The trial court allowed the amendment, ruling that it would not substantially alter the charge or prejudice defendant's defense.

Although N.C. Gen. Stat. § 15A–923(e) provides that "[a] bill of indictment may not be amended[,]" our appellate courts have "interpreted that provision to mean a bill of indictment may not be amended in a manner that substantially alters the charged offense." *State v. Silas*, 360 N.C. 377, 379, 627 S.E.2d 604, 606 (2006). In determining whether an amendment is a substantial alteration of the charge, courts "must consider the multiple purposes served by indictments, the primary one being 'to enable the accused to prepare for trial.' " *Id.* at 380, 627 S.E.2d at 606 (quoting *State v. Hunt*, 357 N.C. 257, 267, 582 S.E.2d 593, 600, *cert. denied*, 539 U.S. 985, 156 L.Ed.2d 702 (2003)).

Defendant was charged with embezzlement under section 14-90, which provides, in pertinent part, as follows:

(a) This section shall apply to any person:

(1) Exercising a public trust.

(2) Holding a public office.

(3) Who is a guardian, administrator, executor, trustee, or any receiver, or any other fiduciary, including, but not limited to, a settlement agent, as defined in G.S. 45A-3.

(4)  Who is an officer or agent of a corporation, or any agent, consignee, clerk, bailee or servant, except persons under the age of 16 years, of any person.

(b)  Any person who shall:

(1)  Embezzle or fraudulently or knowingly and willfully misapply or convert to his own use, or

(2)  Take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use,

any money, goods or other chattels, bank note, check or order for the payment of money issued by or drawn on any bank or other corporation, or any treasury warrant, treasury note, bond or obligation for the payment of money issued by the United States or by any state, or any other valuable security whatsoever that (i) belongs to any other person or corporation, unincorporated association or organization or (ii) are closing funds as defined in G.S. 45A-3, which shall have come into his possession or under his care, shall be guilty of a felony.

N.C. Gen. Stat. § 14-90(a)-(b) (2011).

Because "[t]he embezzlement statute makes criminal the fraudulent conversion of personal property by one occupying some position of trust or some fiduciary relationship as specified in the statute[,]" *State v. Griffin*, 239 N.C. 41, 45, 79 S.E.2d 230, 233 (1953), defendant contends that the nature of that relationship is "critical to the charge of embezzlement" such that the amendment of the indictment in this case substantially altered the charge against him. We disagree.

It is well established that "[a]n agent is one who, by the authority of another, undertakes to transact some business or manage some affairs on account of such other, and to render an account of it." *SNML Corp. v. Bank of North Carolina*, 41 N.C. App. 28, 36, 254 S.E.2d 274, 279, *disc. review denied*, 298 N.C. 204, 254 S.E.2d 274 (1979). Similarly, an employee is defined as "a person in the service of another under a contract of hire . . . which gives the employer the right to control and direct the person in the material details of how the work is to be performed." 27 Am. Jur. 2d *Employment Relationship* § 2 (2013). The overlap in meaning between the terms "employee" and "agent" is illustrated by the fact that the *Restatement* defines "employee" by referencing the term

"agent": "[A]n employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work . . . ." *Restatement (Third) Of Agency* § 7.07(3)(a) (2006).

We believe that the terms "employee" and "agent" are essentially interchangeable for purposes of N.C. Gen. Stat. § 14-90(a). Accordingly, we hold that the amendment of the indictment in this case to allege that defendant was an "employee or agent" of MBM did not substantially alter the crime charged. *See also Patterson v. State*, 38 Ala. App. 166, 168-69, 81 So.2d 344, 346 (Ala. Ct. App.) (holding embezzlement indictment was not subject to dismissal due to "addition of 'or servant' to the description of defendant" as "officer, agent, clerk, [or] employee" because indictment still allowed defendant to "know what [was] intended" and enabled trial court to "pronounce the proper judgment"), *cert. denied*, 262 Ala. 684, 81 So.2d 349 (1955); *Lemmon v. State*, 121 N.J.L. 466, 467-68, 3 A.2d 299, 299-300 (N.J. 1938) (holding defendant was not prejudiced by embezzlement indictment charging defendant as "agent and servant" of complainant because terms were fundamentally interchangeable and similar legal consequences flowed from relationships).

Significantly, although defendant stresses the critical nature of the agency or fiduciary relationship to an indictment for embezzlement, he does not contend that he was "misled or surprised as to the nature of the charge[] against him." *State v. Bailey*, 97 N.C. App. 472, 476, 389 S.E.2d 131, 133 (1990). Indeed, the record – including the transcript of defendant's own testimony – is utterly devoid of any suggestion that he was unaware of the factual basis for the embezzlement charge or that his defense was compromised in any way by the amendment of the indictment.

We conclude that defendant has not shown that the amendment to the indictment prejudiced his defense. *See State v. Tesenair*, 35 N.C. App. 531, 534, 241 S.E.2d 877, 879 (1978) (holding defendant "could not possibly have been prejudiced" by amendment to indictment where defendant's own testimony showed that "he was completely aware of the nature of the charge against him" and his defense did not rely on challenging the factual propositions changed by amendment). The trial court, accordingly, did not err in allowing the amendment in this case.[1]

---

1. Defendant also argues that the trial court erred in permitting the amendment due to a resulting fatal variance between the original allegation in the indictment and the proof at trial. This contention, however, is derivative of defendant's argument that the amendment substantially altered the charged offense in violation of § 15A-923(e). Consequently, this argument fails for the same reasons.

## II  Territorial Jurisdiction

### A.  Motion to Dismiss

Defendant's principal argument on appeal is that the trial court lacked territorial jurisdiction to adjudicate the embezzlement charge because, he contends, any act of embezzlement occurred outside North Carolina. The controlling statute on this issue is N.C. Gen. Stat. § 15A-134 (2011), which provides that North Carolina's courts have jurisdiction over a criminal offense if any of the essential acts forming the crime occur in this State. *State v. Rick*, 342 N.C. 91, 99, 463 S.E.2d 182, 186 (1995).

In order to obtain a conviction for embezzlement, the State must prove that (1) the defendant was the agent or fiduciary of the complainant; (2) pursuant to the terms of the defendant's engagement, he was to receive property of the complainant; (3) he did receive such property in the course of his engagement; and (4) knowing the property was not his, the defendant either converted it to his own use or fraudulently misapplied it. *State v. Robinson*, 166 N.C. App. 654, 658, 603 S.E.2d 345, 347 (2004). It is the fourth element that is at issue in this case – that is, the question of where, if anywhere, defendant converted or misapplied MBM's property.

At trial, in support of his motion challenging the trial court's jurisdiction, defense counsel argued that defendant converted the Plotkin funds, if at all, in Nevada (where he received the money) or in Arizona (where he spent a portion of the money to purchase a plane ticket back to North Carolina). The prosecutor countered that defendant, due to the nature of his relationship with MBM, owed the company a fiduciary duty to remit the Plotkin funds to MBM and that the "locus" of this duty was in North Carolina – where MBM is headquartered. Thus, the prosecutor contended, because "the completion of that fiduciary duty [could] only occur here in North Carolina," North Carolina had jurisdiction to adjudicate the offense.

The trial court determined that the crime had occurred when defendant "fail[ed] to deliver" the Plotkin funds to MBM in North Carolina. The court, therefore, denied defendant's motion to dismiss.[2]

The State's jurisdictional theory was premised on the "duty to account" doctrine. Under this doctrine, "territorial jurisdiction of a prosecution for embezzlement may be exercised by the state in which

---

2. Defense counsel acknowledged that defendant had not been indicted for this offense in any other jurisdiction, and the trial court took judicial notice of this fact.

the accused was under a duty to account for the property." Herbert B. Chermside, Jr., Annot., *Where Is Embezzlement Committed for Purposes of Territorial Jurisdiction or Venue*, 80 A.L.R.3d 514 § 4 (1977) [hereinafter Chermside, *Where Is Embezzlement Committed]; accord State v. Cain*, 360 Md. 205, 211 n.2, 757 A.2d 142, 145 n.2 (Md. 2000) ("[T]he courts of a state have territorial jurisdiction of a crime involving misappropriation of property if the accused had a preexisting obligation to account for the property in that state."). Although North Carolina's appellate courts have not previously had occasion to expressly adopt this theory by name, we do so now based on our conclusion that the doctrine is consistent with the precedents of this Court and our Supreme Court.

The Supreme Court has recognized that the crime of embezzlement, as codified in § 14-90, involves the unlawful conversion of property after the defendant has lawfully acquired possession of the property subject to a duty to deliver the property to, or use the property for the benefit of, its rightful owner. *See State v. Cohoon*, 206 N.C. 388, 393, 174 S.E. 91, 93 (1934) ("In general terms embezzlement 'is the fraudulent conversion of property by one who has lawfully acquired possession of it for the use and benefit of the owner.' ").

While not explicitly addressing the duty to account doctrine by name, our Supreme Court has nevertheless applied the doctrine in determining the proper venue for adjudicating an embezzlement charge. In *State v. Carter*, 126 N.C. 1011, 35 S.E. 591 (1900), the defendant contracted in Robeson County to sell some livestock on behalf of his principal. *Id.* at 1013, 35 S.E. at 592. When the defendant was charged with embezzlement in Robeson County, he moved to have venue transferred to New Hanover County or Columbus County – the counties where, he argued, any misappropriation or conversion would have occurred. *Id.* at 1012-13, 35 S.E. at 592. The trial court denied the motion and the defendant appealed his conviction.

On appeal, our Supreme Court held that venue in Robeson County was proper for the embezzlement prosecution because the defendant owed a duty to account to his principal in that county, explaining as follows:

> [A]s the contract was made in Robeson by which the defendant came into possession of this property, that it was delivered to him and he received the same in Robeson County, and that he was to return it to [his principal] from whom he got possession, *or to account for and pay over*

*the proceeds to [his principal] in Robeson County, that
Robeson County . . . had jurisdiction of the offense.*

*Id.* at 1013, 35 S.E. at 592 (emphasis added).[3]

Having determined that North Carolina law recognizes the duty to
account doctrine, we must apply the doctrine to the facts presented in
this case. MBM's vice president, Moran, testified that (1) the company
was headquartered in Guilford County, North Carolina; and (2) pursuant
to corporate policy, when long-distance drivers – such as defendant –
are out on the road, they are required to mail the customer's payment,
along with the related paperwork, back to corporate headquarters in
Guilford County in order to complete the job and get paid. Moran further
testified, and defendant admitted, that defendant never turned over to
MBM the $2,086.19 in cash he received from Plotkin.

This undisputed evidence establishes that defendant, as an agent
of MBM, had a pre-existing duty to account for the proceeds from the
Plotkin move and that this duty was owed to MBM in North Carolina.
Consequently, the State presented sufficient evidence showing that an
essential act of the crime for which defendant was charged was commit-
ted in North Carolina. See Carter, 126 N.C. at 1013, 35 S.E. at 592.

While defendant argues that this case is controlled by *State
v. Blackley*, 138 N.C. 620, 50 S.E. 310 (1905), overruled on other grounds
by *State v. Batdorf*, 293 N.C. 486, 238 S.E.2d 497 (1977), we disagree.
In *Blackley*, the defendant contracted in Atlanta, Georgia to sell live-
stock in Raleigh, North Carolina on behalf of his principal. *Id.* at 621, 50
S.E. at 311. When the defendant was " 'short' in his returns" after selling
the livestock, he was charged and convicted of embezzlement in North
Carolina. *Id.*

On appeal, the defendant argued that he could not be prosecuted
in North Carolina because the evidence showed that the contract to
sell the livestock was entered into in Georgia. *Id.* Our Supreme Court
rejected this argument, holding that North Carolina had jurisdiction to
adjudicate the charged offense because the State's evidence established

---

3. The fact that Carter dealt with venue while the present case deals with jurisdiction
is immaterial. Our statutes governing venue and jurisdiction in criminal cases are substan-
tively similar with regard to this issue. N.C. Gen. Stat. § 15A-131(e) (2011), the statute gov-
erning venue in criminal cases, provides that "[a]n offense occurs in a county if any act or
omission constituting part of the offense occurs within the territorial limits of the county."
Similarly, § 15A-134 has been interpreted to provide jurisdiction in the courts of this State
"if any of the essential acts forming the crime take place in this [S]tate." *State v. Vines*, 317
N.C. 242, 251, 345 S.E.2d 169, 174 (1986).

that "the conversion into money took place here, and the sum thus realized for [the principal] has not been paid over to him." *Id.*

Defendant reads *Blackley* as holding that North Carolina has territorial jurisdiction to prosecute a charge of embezzlement only if the essential act of conversion takes place in this State. We believe, however, that *Blackley* stands for the proposition that the actual conversion of the property in North Carolina is merely a *sufficient* – as opposed to a *necessary* – basis for such jurisdiction in North Carolina's courts. *See* Chermside, *Where Is Embezzlement Committed*, 80 A.L.R.3d 514 § 2 (explaining that territorial jurisdiction may be exercised to prosecute embezzlement charges by states in which the defendant (1) was under a duty to account for the property; (2) received or possessed the property with fraudulent intent; *or* (3) converted the property).

Thus, so long as "*any* of the essential acts forming the crime take place in this [S]tate[,]" *Vines*, 317 N.C. at 251, 345 S.E.2d at 174 (emphasis added), North Carolina's courts have territorial jurisdiction over the offense. As we have concluded that the duty to account is an essential component of the crime of embezzlement and that the uncontested evidence establishes that defendant owed such a duty to MBM in North Carolina, we hold that the trial court possessed territorial jurisdiction over the charged offense.

We note that the Maryland Court of Appeals addressed a similar issue in *Wright v. State*, 339 Md. 399, 663 A.2d 590 (Md. 1995). In *Wright*, the defendant was a Maryland truck driver employed by a Maryland trucking company who was responsible for making a round of pick-ups and deliveries in several states throughout the Mid-Atlantic region. Id. at 400, 663 A.2d at 590. Under the terms of his employment, the defendant was not authorized to retain for his own use the tractor-trailer provided by his employer, and when he ultimately failed to return to the trucking company's office in Maryland, he was charged with the felony theft of the truck. *Id.* at 400-01, 663 A.2d at 590-91.

Prior to trial, the defendant moved to dismiss the charge based on a lack of territorial jurisdiction. *Id.* at 401, 663 A.2d at 591. The trial court, after considering the State's evidence at trial, denied the defendant's motion and submitted the theft charge to the jury. *Id.* at 401-02, 663 A.2d at 591. On appeal, the Maryland Court of Appeals concluded that the trial court possessed territorial jurisdiction over the charged theft and, therefore, had properly denied the defendant's motion to dismiss – based on the fact that the defendant had "lawfully acquired the tractor-trailer,

subject to a duty to account for this property[,] in Maryland." *Id.* at 406, 663 A.2d at 593.[4]

Our application of the duty to account doctrine here yields the same result reached by the court in *Wright.* The trial court, therefore, properly denied defendant's motion to dismiss.

## B. Jury Instructions

In a related argument, defendant contends that the trial court erred by failing to instruct the jury on the territorial jurisdiction issue. Our Supreme Court has explained that, when the State's jurisdiction is challenged, "the State must prove beyond a reasonable doubt that the crime with which the accused is charged occurred in North Carolina." *State v. Darroch,* 305 N.C. 196, 211, 287 S.E.2d 856, 865-66, *cert. denied,* 457 U.S. 1138, 73 L.Ed.2d 1356 (1982). Where the facts upon which the assertion of jurisdiction is based are contested, the trial court is required to instruct the jury that (1) the State has the burden of proving jurisdiction beyond a reasonable doubt; and (2) if the jury is not satisfied, it should return a special verdict indicating a lack of jurisdiction. *Rick,* 342 N.C. at 100-01, 463 S.E.2d at 187.

Where, however, a defendant's challenge is not to the factual basis for jurisdiction but rather to "the theory of jurisdiction relied upon by the State," the trial court is not required to give these instructions since the issue regarding "[w]hether the theory supports jurisdiction is a legal question" for the court. *Darroch,* 305 N.C. at 212, 287 S.E.2d at 866; accord *State v. Dial,* 122 N.C. App. 298, 305, 470 S.E.2d 84, 88 ("Where a criminal defendant challenges the theory upon which the State claims jurisdiction to try him, the question is a legal question for the court; however, where the defendant challenges the facts upon which jurisdiction is claimed, the question is one for the jury."), *disc. review and cert. denied,* 343 N.C. 754, 473 S.E.2d 620 (1996).

While defendant attempts to portray his jurisdictional argument as one involving a factual dispute, this characterization is incorrect. Defendant's argument is that jurisdiction lies solely in the state where defendant either (1) lawfully obtained possession of his principal's property with fraudulent intent; or (2) misapplied or converted the funds for

---

4. While decisions from other jurisdictions are, of course, not binding on the courts of this State, *Morton Bldgs., Inc. v. Tolson,* 172 N.C. App. 119, 127, 615 S.E.2d 906, 912 (2005), we believe that the analysis in *Wright* correctly applies the duty to account doctrine to a set of facts similar to those existing in the present case and, therefore, find it instructive.

his own use. This argument involves a legal issue rather than a factual one. Defendant and the State disagreed about which theory of jurisdiction should be applied to determine whether North Carolina's courts had territorial jurisdiction to prosecute defendant for embezzlement. As addressed above, the facts relevant to the application of the duty to account doctrine were uncontested. Because "[d]efendant's challenge goes to the [State's] theory of jurisdiction," it was a "question for the courts." *Darroch*, 305 N.C. at 212, 287 S.E.2d at 866. Consequently, the trial court was not required to (1) instruct the jury on the State's burden of proving jurisdiction; or (2) allow the jury to return a special verdict. *Id.* Accordingly, defendant's argument is overruled.

### Conclusion

For the reasons stated above, we conclude that defendant received a fair trial free from error.

NO ERROR.

Judges HUNTER and McCULLOUGH concur.