**STATE v. LALINDE**

[231 N.C. App. 308 (2013)]

STATE OF NORTH CAROLINA
v.
JOHN OMAR LALINDE, Defendant

No. COA13-115

Filed 3 December 2013

**1.  Jurisdiction—special instruction denied—no factual dispute**

The trial court properly declined to give the jury a special instruction regarding jurisdiction in a prosecution for child abduction where the evidence showed, and defendant did not dispute, that the child was either abducted or that defendant's final act of inducing her to leave her parents occurred in North Carolina. A special jury instruction on jurisdiction is only proper when a defendant challenges the factual basis for jurisdiction.

**2.  Felonious Restraint—restraint by fraud—evidence sufficient**

The trial court properly denied defendant's motion to dismiss the charge of felonious restraint arising from the abduction of a child where the State's evidence was sufficient to show that defendant restrained the victim by defrauding her into entering his car and driving to Florida with him. While defendant argued that the child was not deceived because she knew he wanted to have sex with her, this argument viewed the evidence in the light most favorable to defendant, contrary to the well-established standard of review for motions to dismiss.

Appeal by defendant from judgments entered 1 October 2012 by Judge W. Douglas Parsons in Pender County Superior Court. Heard in the Court of Appeals 28 August 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General V. Lori Fuller, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for defendant-appellant.*

GEER, Judge.

Defendant John Omar Lalinde appeals from his convictions of child abduction and felonious restraint. On appeal, defendant primarily argues that the trial court erred in denying his request for a special

instruction regarding whether North Carolina had jurisdiction over the child abduction charge. Because defendant does not dispute the facts relevant to the jurisdiction question and those facts establish that one element of the crime occurred in North Carolina, there was no issue for the jury to resolve, and the trial court properly declined to instruct the jury regarding jurisdiction.

With respect to the charge of felonious restraint, defendant argues that the State failed to prove that he restrained the alleged victim. We hold, however, that the State's evidence was sufficient to show that defendant restrained the victim by defrauding her into entering his car and driving to Florida with him. The trial court, therefore, properly denied defendant's motion to dismiss the charge of felonious restraint.

## Facts

The State's evidence tends to show the following facts. When "Anna"[1] was nine years old, she lived across the street from defendant in Orlando, Florida. She and her neighbor Jessica got to know defendant when they played with his dog in the yard. Anna began regularly talking to defendant on the phone when she was 10 years old after her family had moved to a different house a few miles away and defendant gave her his phone number. She would also see defendant when she went to Jessica's house. When Anna was 11 or 12 years old, defendant persuaded Anna to sneak out of her house in the middle of the night so that he could give her a cell phone that she could use to call him. Her parents confiscated the phone a couple days later, but they did not know that the phone came from defendant, and Anna continued calling him. Anna's parents did not know about the phone calls or that Anna would see defendant when she went to Jessica's house.

In 2009, when Anna was 13 years old, she moved to North Carolina. She continued to telephone defendant, and in August 2010, defendant sent her a teddy bear, a two-piece bathing suit, and a cell phone on defendant's cell phone plan that had a camera feature. At defendant's request, Anna sent defendant photos of herself in the bathing suit and photos of herself naked. During their conversations, defendant and Anna told each other they loved one another. Defendant told Anna that if she left North Carolina, she could stay with him in Orlando and complete online classes. He also told her that he wanted to have sex with her.

---

1. The pseudonym "Anna" is used throughout this opinion to protect the minor's privacy and for ease of reading.

STATE v. LALINDE

[231 N.C. App. 308 (2013)]

Shortly after moving to North Carolina, Anna confided to defendant that while living in Orlando, her brother Anthony had raped and sexually molested her. Anthony initially did not move with the family to North Carolina, but instead decided to remain in Florida with his aunt.

In late September 2010, Anna's parents told her that Anthony, who was 19 years old at the time, was on a flight from Florida to North Carolina and was going to move back in with the family. At that point, Anna told her parents about the sexual abuse for the first time. Nevertheless, her parents still allowed Anthony to move back into the house.

At 3:00 in the morning on 2 October 2010, Anthony tried to enter Anna's locked bedroom. Anna escaped through her bedroom window and spent the night in the playhouse in the back yard. She called defendant to tell him what had happened, and he suggested that she come with him to Florida and stay at his house. Anna agreed to leave with defendant, and he drove from Florida to North Carolina to pick her up. Defendant arranged to meet Anna at the end of her street so that no one would see him. Anna snuck out of the house and her 19-year-old cousin Charles helped her carry a laundry basket full of her clothes to the end of the road. When defendant arrived, he greeted Anna with a kiss on the cheek. He asked Anna why Charles was there and said, "Nobody was supposed to see me." Anna got into the truck with defendant and drove with him back to his house in Florida. Anna's parents did not know she was leaving.

When Anna and defendant arrived at his house in Florida, she unpacked and took a shower. While she was in the shower, defendant hid her clothes, and when she got out of the shower, she found defendant sitting on his bed naked. Defendant laid Anna down on the bed, pinned her arms above her head, and, without her consent, had sexual intercourse with her.

The following day, defendant left for work, and defendant's mother took Anna to her house a few minutes away. When defendant returned to his mother's house for lunch, he removed the SIM card from Anna's phone and destroyed it. After defendant came home from work, police came by his mother's house looking for Anna. Defendant and his mother told Anna to go out the window and hide in the backyard. At that time, defendant was interviewed by phone by Detective John Leatherwood from the Pender County Sheriff's Office who suspected that he had Anna. Defendant denied knowing where Anna was or having talked to her in the previous two weeks. Police returned again later in the evening, and Detective Leatherwood informed defendant by phone that the police

had tracked defendant's and Anna's cell phones from North Carolina to Florida. Defendant continued to deny having seen or heard from Anna and claimed he had lost his phone.

At some point that evening, Anna was able to call her grandfather, and he and her aunt came to pick her up from defendant's mother's house. Afterwards, defendant called Detective Leatherwood and told him that Anna had tried to come to his house but was unable to get in, so she came to his mother's house, where she was picked up by her aunt.

Defendant was indicted for child abduction, felonious restraint, second-degree rape, statutory rape, and kidnapping. The rape charges were dismissed for lack of jurisdiction. After a jury trial, the jury acquitted defendant of first and second degree kidnapping, but found him guilty of child abduction and felonious restraint. The trial court imposed a presumptive-range term of 16 to 20 months imprisonment for abduction of a child, followed by a consecutive presumptive-range term of 16 to 20 months imprisonment for felonious restraint. Defendant timely appealed to this Court.

I

[1] Defendant first argues that the trial court erred in denying his request for a jury instruction and special verdict as to North Carolina's jurisdiction over the child abduction charge. Generally, when a crime occurs in more than one state, "any state in which an essential element of a crime occurred may exercise jurisdiction to try the perpetrator." *State v. First Resort Properties*, 81 N.C. App. 499, 500, 344 S.E.2d 354, 356 (1986).

Jurisdiction over interstate criminal cases in North Carolina is governed by N.C. Gen. Stat. § 15A-134 (2011), which provides "[i]f a charged offense occurred in part in North Carolina and in part outside North Carolina, a person charged with that offense may be tried in this State if he has not been placed in jeopardy for the identical offense in another state." This statute confers jurisdiction "where *any part of the crime occurred.*" *First Resort Properties*, 81 N.C. App. at 501, 344 S.E.2d at 356.

A special jury instruction on jurisdiction is only proper when a defendant challenges the factual basis for jurisdiction. *State v. Tucker*, 227 N.C. App.627, 637, 743 S.E.2d 55, 61 (2013) ("Where the facts upon which the assertion of jurisdiction is based are contested, the trial court is required to instruct the jury that (1) the State has the burden of proving jurisdiction beyond a reasonable doubt; and (2) if the jury is not satisfied, it should return a special verdict indicating a lack of jurisdiction.").

*See, e.g., State v. Holden,* 160 N.C. App. 503, 508, 586 S.E.2d 513, 517 (2003) (holding trial court erred by failing to instruct jury on jurisdiction when defendant disputed whether rapes occurred in Virginia or North Carolina), *aff'd per curiam by an equally divided court,* 359 N.C. 60, 602 S.E.2d 360 (2004).

When the defendant challenges whether any offense occurred or whether he was the perpetrator, but he does not dispute the facts upon which jurisdiction is based, then the trial court properly refuses to instruct the jury on the issue of jurisdiction. *See, e.g., State v. White,* 134 N.C. App. 338, 341, 517 S.E.2d 664, 667 (1999) (holding that trial court properly refused to instruct on jurisdiction when there was no dispute that offense occurred in North Carolina and only issue was whether defendant committed that offense); *State v. Callahan,* 77 N.C. App. 164, 169, 334 S.E.2d 424, 428 (1985) ("[A]lthough the facts supporting defendant's commission of the offenses were in dispute, the fact upon which jurisdiction was based, i.e., the location where the offenses were committed, was not in issue. Therefore, the requested instruction was properly denied.").

Similarly, when "a defendant's challenge is not to the factual basis for jurisdiction but rather to 'the theory of jurisdiction relied upon by the State,' the trial court is not required to give these instructions since the issue regarding '[w]hether the theory supports jurisdiction is a legal question' for the court." *Tucker,* 227 N.C. App. at 637, 743 S.E.2d at 61-62 (quoting *State v. Darroch,* 305 N.C. 196, 212, 287 S.E.2d 856, 866 (1982)). In *Tucker,* the defendant was charged with embezzlement. *Id.* at 628, 743 S.E.2d at 56. He did not dispute the underlying facts but argued that "jurisdiction lies solely in the state where defendant either (1) lawfully obtained possession of his principal's property with fraudulent intent; or (2) misapplied or converted the funds for his own use." *Id.* at 637-38, 743 S.E.2d at 62. This Court concluded that the defendant's jurisdictional challenge addressed only the State's legal theory of jurisdiction. *Id.* at 638, 743 S.E.2d at 62. It was thus a legal question for the court and a jury instruction was not required. *Id.*

Here, a person is guilty of child abduction if he or she "abducts or induces any minor child who is at least four years younger than the person to leave any person, agency, or institution lawfully entitled to the child's custody, placement, or care . . . ." N.C. Gen. Stat. § 14-41(a) (2011). It is "not necessary for the State to show she was carried away by force, but evidence of fraud, persuasion, or other inducement exercising controlling influence upon the child's conduct would be sufficient to sustain a conviction" for this offense. *State v. Ashburn,* 230 N.C. 722,

723, 55 S.E.2d 333, 333-34 (1949) (holding evidence that 11-year-old girl consented to defendant's marriage proposal, defendant drove to girl's school during recess, "said to her, 'Come on, let's go,' and she got in the car with him and he drove away" and "[t]his was without the knowledge or consent of her mother" was sufficient to sustain conviction for child abduction).

In this case, the evidence shows, and defendant does not dispute, that Anna was either abducted or defendant's final act of inducing her to leave her parents occurred when defendant picked Anna up down the street from her parents' home in Rocky Point, North Carolina. Therefore, the child abduction occurred, at least in part, in North Carolina. Further, since defendant did not contend that he had "been placed in jeopardy for the identical offense" in Florida, jurisdiction in North Carolina was proper. *See* N.C. Gen. Stat. § 15A-134.

Defendant, however, focuses on the element of inducement and argues that any inducement occurred with his telephone calls to Anna made from Florida. Defendant further argues that a disputed issue of fact exists regarding whether any of the 10 phone calls from defendant to Anna on the day he drove to pick her up were placed while he was in North Carolina.

In support of his argument that this factual dispute draws into question North Carolina's jurisdiction, defendant cites *State v. Kirk*, 221 N.C. App. 245, 725 S.E.2d 923, 2012 WL 1995293, at *10, 2012 N.C. App. LEXIS 674, at *26 (unpublished), *disc. review denied*, 366 N.C. 233, 731 S.E.2d 413 (2012), another child abduction case. In *Kirk*, this Court held that emails sent by the defendant from a North Carolina computer to the victim saying " 'I think I love you' " and " 'I'm coming to get you' " were sufficient to show that the essential act of inducement took place in North Carolina. *Id.* While *Kirk*, as an unpublished opinion, is not controlling, its reasoning does not suggest a different result in this case. *Kirk* simply holds that jurisdiction in North Carolina may be based on acts of inducement prior to the victim's actually leaving the custody of her parents. *Kirk* does not -- as it could not -- hold that only the element of inducement and no other element may be the basis for jurisdiction in North Carolina with respect to a charge of child abduction.

In this case, therefore, any dispute over where the acts of inducement took place are immaterial to the question of North Carolina's jurisdiction because defendant does not dispute that he picked Anna up -- and Anna left her parents' custody -- in Rocky Point. Since there was no factual dispute regarding the basis for jurisdiction, the issue was a

question of law to be decided by the trial court. The trial court properly found that an essential act of the crime of child abduction took place in North Carolina and did not err in denying defendant's request for a jury instruction on jurisdiction.

II

**[2]** Defendant next argues that the trial court should have granted his motion to dismiss the charge of felonious restraint. "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

It is well established that " '[u]pon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). When reviewing motions to dismiss, " 'we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences.' " *Fritsch*, 351 N.C. at 378-79, 526 S.E.2d at 455 (quoting *Barnes*, 334 N.C. at 75, 430 S.E.2d at 914).

A defendant may be found guilty of felonious restraint "if he unlawfully restrains another person without that person's consent, or the consent of the person's parent or legal custodian if the person is less than 16 years old, and moves the person from the place of the initial restraint by transporting him in a motor vehicle or other conveyance." N.C. Gen. Stat. § 14-43.3 (2011). Defendant argues that there was insufficient evidence that he "restrained" Anna.

N.C. Gen. Stat. § 14-43.3 specifies that "[f]elonious restraint is considered a lesser included offense of kidnapping." Consequently, the requirement for "restraint" for a charge of kidnapping is the same as the requirement of "restraint" for a charge of felonious restraint.

Defendant argues that his motion to dismiss should have been allowed because he did not prevent Anna from leaving his truck, he did not physically restrain her, he did not force her out of her house, and he did not make any threats to her. Our courts have, however, explained that "[t]he term 'restrain,' while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction,

by force, threat *or fraud,* without a confinement." *State v. Fulcher,* 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978) (emphasis added). Specifically, "restraint" can also occur when "one person's freedom of movement is restricted due to another's fraud or trickery." *State v. Sturdivant,* 304 N.C. 293, 307, 283 S.E.2d 719, 729 (1981).

In *Sturdivant,* the Supreme Court held that the evidence was sufficient to show "an effective restraint of the victim in her automobile" when, after helping the victim who was experiencing car trouble on her way home to South Carolina, the defendant entered the victim's car "under the fraudulent pretext of seeking a ride to the home of a crippled friend." *Id.* at 306, 283 S.E.2d at 728. The Court explained that "[t]his constraint of the victim continued as defendant directed her to turn off the highway onto a dirt road, whereupon he cut off the car engine, made physical advances upon her, refused her repeated requests for him to leave the vehicle and later, while persisting in the pretense of going to the home of a crippled friend, made her drive still further along that deserted road." *Id.,* 283 S.E.2d at 728-29. In concluding that this restraint was sufficient to support the charge of kidnapping, the Court noted: "A kidnapping can be just as effectively accomplished by fraudulent means as by the use of force, threats or intimidation." *Id.* at 307, 283 S.E.2d at 729.

Applying these principles, this Court held in *State v. Williams,* 201 N.C. App. 161, 172, 689 S.E.2d 412, 417, 418 (2009), that there was sufficient evidence that the defendant "confined, restrained, or removed" the victim when he "induced [the victim] to enter his car on the pretext of paying her money in return for a sexual act" when in reality his intent was to assault and rob the victim. This Court concluded that "a reasonable mind could conclude from the evidence that had [the victim] known of such intent, she would not have consented to have been moved by defendant from the place where she first encountered him." *Id.,* 689 S.E.2d at 418.

In this case, as in *Sturdivant* and *Williams,* the evidence, when viewed in the light most favorable to the State, is sufficient to allow a reasonable jury to find that defendant restrained Anna in his truck through fraud. The evidence shows that defendant, a man in this thirties, had formed an inappropriate relationship with a nine-year-old girl and gained her trust and strengthened the secret relationship over the following five-year period. Anna confided in him that she had been sexually abused by her older brother and that she feared he would rape her again when he moved back to North Carolina. When her brother tried to break into her room, Anna called defendant, and he offered to come get her

and bring her to Florida to live with him -- in other words, he offered to rescue her from her brother. When Anna met him at the end of her street, he did not greet her in a sexual way, but rather gave her a deceptively innocent kiss on the cheek. Then, shortly after they arrived at his house in Florida, he took away Anna's clothes, pinned her to the bed, and had non-consensual sex with her.

A reasonable juror could conclude from this evidence that defendant duped Anna into getting into his car and traveling to Florida by assuring her that his intent was to rescue her from further sexual assaults by her brother when instead his intent was to isolate her so that he could sexually assault her himself. A reasonable juror could further conclude that defendant's failure to tell Anna that he intended to have sex with her and his kiss on her cheek were each intended to conceal from her his true intentions and that she would not have gone with him had he been honest with her.

Defendant, however, argues that there is no evidence of fraud because representations that he promised to help Anna escape from her brother were not false. It is well established, however, that fraud may be based upon an omission.

> Fraud has no all-embracing definition. Because of the multifarious means by which human ingenuity is able to devise means to gain advantages by false suggestions and concealment of the truth, and in order that each case may be determined on its own facts, it has been wisely stated that fraud is better left undefined, lest, as *Lord Hardwicke* put it, the craft of men should find a way of committing fraud which might escape a rule or definition. However, in general terms fraud may be said to embrace all acts, *omissions,* and *concealments* involving a breach of legal or equitable duty and resulting in damage to another, or *the taking of undue or unconscientious advantage of another.*

*Vail v. Vail,* 233 N.C. 109, 113, 63 S.E.2d 202, 205 (1951) (emphasis added) (internal citations and quotation marks omitted). Thus, fraud may be based upon defendant's failure to make clear to Anna his intentions to have sex with her when he knew she thought she was being rescued.

Defendant argues further that, in any event, Anna was not deceived because she knew he wanted to have sex with her, and there is no evidence that Anna would not have gone to Orlando with him had he told her of his actual intentions. He points to evidence that he had told Anna

on prior occasions that he wanted to have sex with her and that, when asked whether she would have gone with defendant if he had told her that they were going to have sex, she responded, "I'm not sure." This argument, however, views the evidence in the light most favorable to the defendant, contrary to the well-established standard of review for motions to dismiss. A reasonable juror could have concluded from all the evidence that Anna did not understand that she would be forced to have sex with defendant and that she would not have left with defendant if she had known that she would have no choice.

We, therefore, conclude that the State presented substantial evidence that defendant restrained Anna in his truck by inducing her through fraud to enter his truck and drive to Florida. Accordingly, the trial court properly denied defendant's motion to dismiss the charge of felonious restraint.

No error.

Judges ROBERT C. HUNTER and McCULLOUGH concur.