

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00399-CR

STEPHAN ANDREW COX                                                        APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1325641D

----------

## OPINION

----------

In five points, Appellant Stephan Andrew Cox appeals his convictions for

aggravated kidnapping and sexual assault of a child. We affirm.

## Facts and Background

Cox was twenty-six years old and living in Columbus, Ohio when he first connected with Zoe,[1] a 14-year-old girl[2] living in Haltom City, via the social messaging application known as Kik Messenger. Cox initiated the contact with Zoe, and they talked about Zoe's life and her family. According to Zoe, he was nice to her at the beginning and told her she was pretty. Zoe testified that at some point he asked her to send suggestive pictures of herself to him, and she did.[3] Eventually he asked for her phone number, Zoe provided it, and they began communicating through text messages.

After a while, Cox suggested they should run away to Colombia together. According to Zoe, after first directing her to model some clothing for his approval, Cox then instructed her to pack a bag. They agreed to meet on the street outside of her middle school on April 24, a plan Cox told Zoe not to share with anyone else.[4]

---

[1]In accordance with rule of appellate procedure 9.8, we refer to children and family members by pseudonyms. Tex. R. App. P. 9.8 cmt.

[2]Zoe was sixteen at the time of trial.

[3]Zoe later equivocated, testifying that she did not recall if she had sent him any suggestive pictures, but "it [was] a possibility."

[4]Zoe told sexual assault nurse examiner Maureen Edwards and the jury at trial that she was afraid because Cox threatened to hurt her family if she did not run away with him.

Complying with his instructions, Zoe did not tell her parents about Cox or their plans to run away to Colombia together, and on April 24, Zoe went to school as usual and took the STAAR test. When school was over, she met Cox outside the campus. Once they were together, Cox gave Zoe various other instructions, including that she should act like she was his little sister, avoid talking, and walk behind him so that it wouldn't look like they were walking together. According to Zoe, at some point she forgot to act like his little sister, and this made Cox mad. Zoe added that Cox was "always mad" and when he was mad, he was mean.

From school, they took a city bus to the Greyhound terminal in Fort Worth. While on the city bus, Cox took possession of Zoe's cell phone. Zoe testified that Cox had already purchased the bus tickets and that at this point she did not know where the bus would be taking them. They waited for more than an hour for their bus to arrive, during which time Zoe went to the ladies' restroom once unattended and Cox went to the men's restroom, again leaving Zoe unattended.

After the two had boarded the Greyhound bus and were en route to El Paso, Cox destroyed Zoe's cell phone. Zoe testified that this frightened her because she realized at that point that she had lost the ability to contact her family.[5]

---

[5]Zoe testified that she did not have any of her family members' phone numbers memorized. Nor did she bring any money with her on this trip.

Zoe testified that she became increasingly afraid as they continued toward El Paso. According to Zoe, while they were on the Greyhound bus, Cox forced Zoe to perform oral sex on him.[6]

When Cox and Zoe arrived in El Paso, they checked into a hotel room. Zoe testified that nothing sexual took place between them in the El Paso hotel room, but it was at that point that she realized she had gotten in over her head. According to Zoe, once they arrived in El Paso, Cox stayed with her at all times and did not allow her to leave the hotel room without him. When they did leave the hotel room, they went to the library, where Cox used the internet to look for a vehicle and a place to stay.

Eventually, Cox and Zoe walked across a bridge and into Juarez, Mexico. Once in Mexico, they checked into a hotel near the border, and at that point whenever Cox would leave the hotel room, he would lock the door so that Zoe could not leave. Zoe testified that this frightened her because she "never really knew what he was going to do when he came back." Zoe also testified that once they arrived in Mexico, she did not eat because Cox did not provide her with any food. Against her wishes, he also cut her hair. According to Zoe, at one point

---

[6]In response to questioning about why she did not yell aloud or take other action at this point to stop him, Zoe replied that he was "mean."

she tried to run away from the hotel through an open door, but Cox grabbed her and hit her on her face and on her buttocks.[7]

While in the hotel room in Juarez, Cox and Zoe twice engaged in sexual intercourse. Zoe testified that he forced himself upon her but that she did not protest while it was occurring because she was "in shock." According to Zoe, Cox did not wear a condom even though he had purchased some. Zoe described it as painful and testified that she was scared to be with him afterwards.

During their journey, the North Richland Hills police had been monitoring Cox's and Zoe's cell phone activity and had tracked their movements from her school in Haltom City to the Fort Worth Greyhound bus station and on to El Paso. On May 1, however, the police stopped receiving any pings[8] on Cox's phone. Nevertheless, they were still able to receive outgoing phone call information that indicated that he had crossed the border into Mexico. The North Richland Hills police contacted the Texas Rangers, who, in turn, contacted the Mexican police, to assist in finding Zoe.

---

[7]The two did leave the hotel room together at one point in order to obtain matching tattoos. Each received a tattoo with half of a flaming broken heart— hers with the letters "L-O," and his with the letters "V-E" inscribed across the middle—on their upper arms.

[8]The police were able to track Cox's cell phone by tracking which cell phone transmittal towers the phone had "pinged" or been utilized while the pair was traveling.

On May 2, eight days after the Greyhound bus carrying Cox and Zoe had left for El Paso, the Mexican police notified the North Richland Hills police that they had located Zoe and Cox at a hotel in Juarez. When the Mexican authorities arrived at the hotel, Cox refused to open the door, so the police broke through it and immediately separated Cox and Zoe. The Mexican authorities then took Zoe to a doctor, who performed a vaginal examination and administered medicine to her.[9] After that, Texas Ranger Kevin Wright retrieved Zoe and drove her back to El Paso.

The next morning, Zoe was flown to Tarrant County and taken directly to Cook Children's Hospital, where a second examination was performed by Edwards, who later testified at trial. Edwards took photographs of Zoe, including photos that showed a hickey on her chest, a bruise on her thigh, and the tattoo on her upper arm. She also obtained swabs of Zoe's vaginal area and mouth.[10] Edwards described Zoe as "hostile" when questioned, sometimes answering her questions and sometimes not.

After the exam at Cook's, Zoe was interviewed by Carrie Paschall, a forensic examiner at Alliance for Children. In that interview, Zoe denied that Cox

---

[9]Zoe testified that she did not know what the medicine was for and did not really know what was going on during the examination.

[10]Edwards could not obtain swabs of Zoe's cervix because Zoe refused a speculum examination. Edwards explained that due to the time that had passed since the last sexual assault that took place, the cervix is where any semen would most likely have been found.

had told her not to tell her parents about their plan to go to Mexico. Instead, according to Paschall, Zoe related that she had told Cox she wanted to run away with him because her parents fought. But Paschall also testified that during the interview, Zoe said that Cox had threatened both her and her family.

After the examination and interview, Zoe was reunited with her parents. At that point, according to Zoe, she was happy to be home, and at trial she admitted that she had made some "bad decisions" and expressed regret for going with Cox.

At the conclusion of a week-long jury trial, Cox was found guilty of aggravated kidnapping and two counts of sexual assault. He was sentenced to fifty years' imprisonment on the charge of aggravated kidnapping, ten years' imprisonment on the first count of sexual assault of a child, and fifteen years' imprisonment on the second count of sexual assault of a child.

## Discussion

### A. Evidence of Restraint

In his first point of error, Cox argues that the evidence is insufficient to support the conviction for aggravated kidnapping because there is no evidence that he restrained Zoe.

#### i. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

7

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

### ii. Application

To show that Cox committed the aggravated kidnapping of Zoe, the State had to prove that he intentionally or knowingly abducted her with the intent to

8

violate or abuse her sexually. Tex. Penal Code Ann. § 20.04(a) (West 2011). According to section 20.01(2) of the penal code, "abduct" means "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." Tex. Penal Code Ann. § 20.01(2) (West 2011).

The penal code defines restraint as "restrict[ing] a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." Tex. Penal Code Ann. § 20.01(1). When the kidnapped person is fourteen years old, as Zoe was at the time, the restraint is "without consent" if she is taken outside of the state and outside a 120-mile radius of her residence without the consent of her parents. Tex. Penal Code Ann. § 20.01(1)(B)(ii).

Cox argues that the State failed to prove he restrained Zoe so as to substantially interfere with her liberty. In so arguing, he relies on evidence that Zoe acted willingly in meeting Cox and in going with him to Mexico, that she appeared "casual" and unrestrained in surveillance videos from the bus stations and gas station, and that she failed to take advantage of numerous opportunities to escape him or seek help from other travelers or authorities—especially when she acted as a Spanish translator to agents at the Mexican border.[11] Cox is

___

[11]Cox did not speak Spanish, so Zoe translated when they spoke to the agents at the border. According to Zoe, it was a short conversation—the border agent examined Cox's bag and asked Zoe if Cox was planning to sell his clothes in Mexico, and Zoe answered, "No."

9

correct that there is ample evidence in this record that Zoe was not confined against her will, such that the jury may have weighed that evidence in favor of an acquittal. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. However, the evidence is conflicting. And as there is also sufficient evidence to the contrary that he did restrain her against her will, we must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

The penal code defines neither the term "confine" nor "confining," and terms that are not defined in a statute are to be given their plain and ordinary meaning. *See Courtemanche v. State*, 507 S.W.2d 545, 546 (Tex. Crim. App. 1974). Webster's defines the verb "confine" to mean "to hold within bounds," "to restrain from exceeding boundaries," or "to keep in narrow quarters: imprison." Webster's Third New International Dictionary 476 (2002); *see also Holmes v. State*, 873 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no pet.) (defining "confine" as "to shut up, imprison, immure, put or keep in detention, to relegate to certain limits"). Cox acknowledges in his brief that there is no time requirement for determining whether a restraint has taken place. *Hines v. State*, 75 S.W.3d 444, 447–48 (Tex. Crim. App. 2002). Likewise, there is "no minimal requirement for restraint other than the interference with the victim's liberty [to] be substantial." *Rogers v. State*, 687 S.W.2d 337, 342 (Tex. Crim. App. 1985)

10

(quoting *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.—Houston [1st Dist.] 1982, no pet.)).

We must examine the evidence in the light most favorable to the jury's verdict, and whether Cox's interference with Zoe's liberty was substantial or slight was a question for the jury. *See Hines*, 75 S.W.3d at 448 ("It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place."). To do so, the jury is to look at all of the circumstances surrounding the offense. *Id.* Cox argues that no rational juror could find that Zoe was restrained, but we do not agree.

Zoe described Cox as mean and "always mad." She testified on more than one occasion that he frightened her. She confirmed at trial that Cox threatened to hurt her family if she did not go to Colombia with him. Cox further deprived Zoe of virtual access to friends, family, and emergency personnel when, at the outset of the journey, he took possession of her cell phone and later destroyed it.

Cox argues that this evidence can only be considered as evidence of consent, not restraint, relying on the penal code's definition of "restraint" as being accomplished "without consent" if done by "force, intimidation, or deception." Tex. Penal Code Ann. § 20.01(1)(A). But this interpretation attempts to read the statute in piecemeal, rather than in a cohesive manner. The statute defines "restraint" as occurring by "any means, including acquiescence" of a 14-year-old victim when the victim is taken out of the state. Tex. Penal Code Ann. §

11

20.01(1)(B)(ii); *see also Walker v. State*, No. 13-01-00568-CR, 2002 WL 34230963, at *3 (Tex. App.—Corpus Christi Aug. 8, 2002, no pet.) (not designated for publication) (noting that to prove restraint, defendant accused of kidnapping "need only have restricted the child's movement by 'any means, including acquiescence of the victim' in order to constitute restraint") (quoting Tex. Penal Code Ann. § 20.01(1)(B)(i)); *Buggs v. State*, Nos. 05-07-00676-CR, 05-07-00677-CR, 05-07-00749-CR, 2008 WL 541892, at *6 (Tex. App.—Dallas Feb. 29, 2008, pet. ref'd) (not designated for publication) (upholding conviction for aggravated kidnapping even though victim could have attempted to escape but did not because she was afraid defendant would kill her).

The jury was presented with evidence that Cox intimidated Zoe through threats and displays of anger. The jury could have reasonably found that these intimidation tactics effectively prevented Zoe from voluntarily extricating herself from his dominion. The jury could also have found that the use of intimidation to move her from her home in Tarrant County to unfamiliar locations, including El Paso and Juarez, Mexico, worked to substantially interfere with her liberty by effectively depriving her of viable opportunities to escape his presence.

Having concluded there was sufficient evidence to support the jury's finding that Cox kidnapped Zoe, we overrule Cox's first point.

## B. Territorial Jurisdiction over Sexual Assault Committed in Mexico

From his home in Ohio, Cox used a popular social messaging application on his phone to prey upon Zoe, a 14-year-old Texas girl. He cultivated an

inappropriate and abusive relationship with her, threatening to hurt her and her family if she did not agree to run away with him to Colombia.  He then traveled a thousand miles to Tarrant County, Texas, to meet up with her at her middle school and escort her to a bus station, while he demanded that she not talk and that she pretend to be his sister to avoid any suspicion.  He took from her the only means of communication she had—her cell phone—thus isolating her from her social support network, her family members, and her peers.  Cox's subjective awareness of the wrongful and criminal nature of his conduct is evidenced by these steps he took to ensure that the true nature of their relationship was concealed from persons who might observe them on their 600-mile journey across Texas to Mexico.  Once across the international border, Cox locked Zoe in a hotel room[12], deprived her of food, and sexually assaulted her.  Cox now

---

[12]The infamous Triangle Shirtwaist Factory fire of 1911 resulted in a nationwide push toward adopting and enforcing strict building codes to prevent the locking of egress doors necessary for occupants in exiting buildings during a fire and other emergencies.  *See* ASSA ABLOY, Codes and Compliance: Demystifying the Door Opening 10 (2014).  Due to the success of this effort, it is highly unlikely that a person could be locked into a hotel room located in the United States.  However, such fire and emergency codes have not necessarily been adopted in other countries, or if adopted are not necessarily enforced to the extent they are in the United States.  So, although it may be a foreign concept to Americans, it is possible that the hotel room in Juarez, Mexico, could have been locked from the outside, thus preventing Zoe from opening the door from the inside.  *See* Kevin Coffey, *Hotel Safety Tips for Travelers*, Corporate Travel Safety, http://www.kevincoffey.com/hotel/hotel_safety.htm (last viewed May 6, 2016) (cautioning that some hotels in other countries still have locks requiring keys in order to lock or unlock the room from the inside). At any rate, there is no controverting evidence in this record challenging or impeaching Zoe's testimony on this point.

argues in his second issue that the State of Texas does not have jurisdiction over that sexual assault because it occurred in a Juarez hotel room rather than within the boundaries of the state from which she was abducted and transported.[13]

The State concedes that jurisdiction does not exist under section 1.04(a)(1) of the penal code[14] and instead argues that it exists under subsection (a)(4) because Cox's conduct in Tarrant County was preparatory and in aid of the sexual assault committed in Juarez. Tex. Penal Code Ann. § 1.04(a)(1), (4) (West 2011). These preparatory acts, the State argues, make him "criminally responsible" for the sexual assault in Mexico. Unfortunately, the State does not

---

[13]The indictment does not specify where this sexual assault occurred; however, the State does not dispute that the evidence established it took place in Juarez.

[14]The cases finding jurisdiction under section 1.04(a)(1) do so because an element of the offense occurred on Texas soil. *See, e.g.*, *Rodriguez v. State*, 146 S.W.3d 674, 676–77 (Tex. Crim. App. 2004) (holding that Texas had territorial jurisdiction over capital murder prosecution because the aggravating factor of kidnapping took place in Texas and was an element of the offense of capital murder); *Yates v. State*, 370 S.W.3d 772, 773–75 (Tex. App.—Texarkana 2012, pet. ref'd) (holding that Texas had jurisdiction over an aggravated sexual assault that took place in Arkansas where defendant's use or exhibition of a deadly weapon took place in Texas when he threatened to kill her if she did not get into his truck); *Latimer v. Quarterman*, No. 4:08-CV-072-A, 2009 WL 1074802, at *6 (N.D. Tex. Apr. 17, 2009) (denying federal habeas corpus petition where state trial court had found it had territorial jurisdiction under a straight murder theory "because the acts of applying the duct tape and placing [the victim] in the trunk occurred in Texas"). But here no element of the offense at issue—sexual assault of a child—occurred on Texas soil.

provide, and we have not found, any cases directly addressing facts such as these where a Texas court has found jurisdiction under section 1.04(a)(4).[15]

Section 1.04(a)(4) provides that the trial court has jurisdiction over an offense that a person commits if "the conduct inside this state constitutes an attempt, solicitation, or conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under the laws of this state." Tex. Penal Code Ann. § 1.04(a)(1), (4). Here, because the evidence does not support a finding—nor does the State argue—that Cox's actions committed in Texas constituted an attempt, a solicitation, or a conspiracy to commit the sexual assault in Mexico, the only theory under which the plain language of section 1.04(a)(4) could be invoked to acquire jurisdiction would require that Cox's conduct established "criminal responsibility for the commission of an offense in [Mexico] that is also an offense [in Texas]." Tex. Penal Code Ann. § 1.04(a)(4).

---

[15]Other federal and state courts have held jurisdiction existed over crimes committed across state borders. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1138–39 (11th Cir. 1991) (holding jurisdiction existed over capital murder of woman in Georgia where the aggravating factor of kidnapping took place in Alabama); *State v. Yegan*, 221 P.3d 1027, 1029–30 (Ariz. Ct. App. 2009) (holding that Arizona had jurisdiction over defendant's solicitation of sexual conduct with a minor through chat room conversations while he was located in California); *State v. Kelly*, 624 N.E.2d 733, 736 (Ohio Ct. App. 1993) (holding Ohio had jurisdiction over rape that occurred in Tennessee where there was a "continuous, unbroken sequence of events" beginning with defendant's abduction of the victim in Ohio"); *State v. Shrum*, 455 N.E.2d 531, 531 (Ohio Ct. App. 1982) (holding that Ohio had jurisdiction over rape committed in Kentucky where the element of force—kidnapping—occurred in Ohio).

A thorough examination of the entire record in this case reveals no evidence that the sexual conduct that occurred between Cox and Zoe in the Juarez hotel room constituted a crime in the city of Juarez, the state of Chihuahua, or the nation of Mexico. The trial court was not asked to take judicial notice of any foreign law and did not take judicial notice of foreign law, nor have we been asked to take judicial notice of foreign law on appeal. Because there is no evidence that the sexual assault that occurred in the hotel room in Juarez constituted a crime in Juarez, section 1.04(a)(4) does not provide a basis for Texas to assert jurisdiction over the crime.[16]

But the inquiry need not stop there. Even if neither section 1.04(a)(1) nor section 1.04(a)(4) provide the basis, we believe Texas may still properly assert jurisdiction under these circumstances.

Section 3.01 of the penal code provides,

> In this chapter, "criminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:

---

[16]While the State argues that the kidnapping was "preparatory" and "in aid of" the sexual assault committed in Juarez, this is not the standard for criminal responsibility. "A person is criminally responsible if the result would not have occurred but for his conduct[.]" Tex. Penal Code Ann. § 6.04(a). Zoe may not have been sexually assaulted *in Mexico* but for Cox's kidnapping of her in Texas, but this relates to the location of the sexual assault, not the elements of the crime of sexual assault. The State has not provided, and we have not found, any Texas law supporting its argument that jurisdiction under section 1.04(a)(4) would attach when so-called "preparatory" steps were taken inside Texas for a crime committed outside the border of Texas.

(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan;  or

(2) the offenses are the repeated commission of the same or similar offenses.

Tex. Penal Code Ann. § 3.01 (West 2011).

The first sexual assault occurred somewhere in Texas during the bus trip to Mexico.  That assault marked the beginning of the criminal episode comprised of sexual assaults by Cox against Zoe.  Cox was charged with the offense of kidnapping for the purpose of committing sexual assault.  And although he was not charged with aggravated sexual assault,[17] a "criminal episode" for purposes of sexual assault begins when the attacker in any way restricts the complainant's freedom of movement, and it ends with the final release or escape of the victim from the attacker's control.  *Burns v. State*, 728 S.W.2d 114, 116 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd).  State courts of Texas have jurisdiction over the prosecution for aggravated sexual assault where the criminal episode forming the basis of charges began within this state.  *Yates v. State*, 370 S.W.3d 772, 774–75 (Tex.App.—Texarkana 2012, pet. ref'd).  Neither side has pointed us to, nor have we found, any authority that would mandate that an element of the extraterritorial crime, in this case sexual assault, take place in Texas in order

---

[17]The State concedes that if it had charged Cox with aggravated sexual assault, jurisdiction would clearly lie under § 1.04(a) and the *Rodriguez* line of cases because the aggravating factor, the kidnapping, took place in Texas.  Tex. Penal Code Ann. § 1.04(a); *Rodriguez,* 146 S.W.3d at 677.  We agree.

17

for Texas to have jurisdiction over the crimes committed as part of one criminal episode. We believe that the plain language of Section 3.01 conferred jurisdiction to the trial court in Texas of the sexual assault that took place in Juarez because it was part of the entire criminal episode beginning with the kidnapping in Tarrant County and the sexual assault on the bus en route to El Paso and culminating with the sexual assault in Jaurez.

Alternatively, the Texas legislature has expressed its intent to exercise extraterritorial jurisdiction over criminal conduct involving sexual assault of a child[18] through article 13.075, which provides:

> An offense under Title 5, Penal Code,[19] involving a victim younger than 18 years of age, . . . that results in bodily injury to a child younger than 18 years of age, may be prosecuted in the county:

---

[18]More than 150 years ago, the United States Supreme Court first recognized the power of the states to prosecute crimes occurring outside their territorial jurisdictions. *Holmes v. Jennison*, 39 U.S. 540, 568–69 (1840) ("Undoubtedly, [the states] may remove from among them any person guilty of, or charged with crimes; and may arrest and imprison them in order to effect this object. . . . They may, if they think proper, in order to deter offenders in other countries from coming among them, *make crimes committed elsewhere punishable in their Courts*[.]" (emphasis added)). With regard to crimes such as assault, larceny, or fraud, however, the Supreme Court has cautioned that in order to acquire extraterritorial jurisdiction, the jurisdiction seeking to acquire it must statutorily express its desire to do so. *United States v. Bowman*, 260 U.S. 94, 97–98 (1922) ("If punishment of them is to be extended to include those committed outside the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard."). Thus, we look to Texas statutes for expressed intent to exercise extraterritorial jurisdiction over criminal conduct involving sexual assault of a child.

[19]The offense of sexual assault of a child is included in Title 5 of the penal code. *See* Tex. Penal Code Ann. § 22.011(a)(2) (West 2011).

(1) in which an element of the offense was committed;

(2) in which the defendant is apprehended;

(3) in which the victim resides; or

(4) in which the defendant resides.

Tex. Code Crim. Proc. Ann. art. 13.075 (West 2015).

As with Article 13.01, this provision falls under a general heading of "Venue." However, article 13.075 has never been interpreted to be solely related to venue. Nor is the actual language of article 13.075 so restricted. On its face, notwithstanding where the sexual assault of a child occurs, the accused may be prosecuted in the county of the victim's residence, as long as the crime resulted in bodily injury to the child.

The evidence established that Zoe resided in Tarrant County, Texas. The evidence also supports that Cox caused bodily injury to Zoe by grabbing her and hitting her on the face and the buttocks prior to forcing unprotected sexual intercourse upon her. Furthermore, Zoe testified that the sexual intercourse was painful and it frightened her.

And although the introductory phrase for article 13.075 is entitled "Child Injured In One County And Residing In Another," the legislative history of this statute clearly indicates that it was enacted with a broader purpose in mind. Article 13.075 was passed in 2011 by the 82nd Legislature in its regular session, as part of Senate Bill 1511. Senate Bill 1511 focused on crimes against children and particularly the abduction of children who are then taken elsewhere,

19

including other states and abroad. *See* House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B. 1551, 82d Leg., R.S. (2011). Much like the adoption of section 1.04 of the penal code, SB 1511 was intended to "fill gaps" and cure "an ambiguity or loophole" in interpreting the missing child statutes in place in 2011. *See id.*; Senate Comm. on Jurisprudence, Bill Analysis, Tex. S.B. 1551, 82d Leg., R.S. (2011). And through the enactment of various statutes included in Senate Bill 1511—and article 13.075 in particular—the Texas legislature expressed its desire to acquire extraterritorial jurisdiction in circumstances just like this one.[20] *Bowman*, 260 U.S. at 97–98.

Reading all statutes together, and keeping the underlying purpose of the penal code and code of criminal procedure in mind, we conclude that the State of Texas has demonstrated its desire to prosecute individuals who would come into this state and prey upon children through threats, kidnapping, and transporting them across international borders in order to sexually assault them. *See Torres v. State*, 141 S.W.3d 645, 656 (Tex. App.—El Paso, 2004). To allow an individual to escape such prosecution simply by walking across the border to commit the actual crime would create just the sort of jurisdictional gap that the Texas legislature has expressly tried to avoid. *See* Seth S. Pearcy, III & James R. Patterson, V.A.P.C., § 1.04, *Practice Commentary*, Vol. 1, p. 18 (1974); Tex.

---

[20]The intent that article 13.075 have international jurisdictional implications, rather than merely a venue application, is evident from the text of the bill as originally introduced, which would have allowed prosecution in the county "to which the defendant is extradited." *See* Tex. H.B. 3177, 82d Leg., R.S. (2011).

20

Code Crim. Proc. art. 13.075 (West 2015); House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B. 1551, 82d Leg., R.S. (2011); Senate Comm. on Jurisprudence, Bill Analysis, Tex. S.B. 1551, 82d Leg., R.S. (2011). For these reasons, Texas may assert extraterritorial jurisdiction over Cox to prosecute him for the sexual assault of Zoe in Mexico. We overrule Cox's second point.

## C. Jury Instruction Regarding Territorial Jurisdiction

In his third point of error, Cox argues that the trial court erred in refusing to give a jury instruction on the issue of territorial jurisdiction.

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*

Initially, the trial court included an instruction regarding section 1.04(a)(1) of the penal code which read as follows:

> You are instructed that this state has jurisdiction over an offense that a person commits by his own conduct, [if] either the conduct or result that is an element of the offense occurs inside this state.

The trial court subsequently removed that instruction upon sustaining the State's objection thereto.[21]

---

[21]The State objected on the basis that territorial jurisdiction is not a defensive issue and that it is an issue for the trial court to decide, not the jury.

21

The legislature has not addressed this issue, and there is a dearth of case law addressing whether this is an issue to be decided by the judge or the jury. *See* George E. Dix & John M. Schmolesky, 40 Tex. Prac. Series, Criminal Practice And Procedure § 4:12 (3d ed.). Well established, however, is that "a defense which is not recognized by the Legislature as either a defense or as an affirmative defense does not warrant a separate instruction." *Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998) (citing *Sanders v. State*, 707 S.W.2d 78, 80–81 (Tex. Crim. App. 1986), *abrogated on other grounds by Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990)), *cert. denied*, 525 U.S. 1147 (1999). The Legislature has not recognized territorial jurisdiction as a defensive issue, and the court of criminal appeals has not specifically authorized a jury instruction such as the one Cox requested.[22] To the contrary, the court of criminal appeals has held that "jurisdiction is not an element of an offense." *Calton v. State*, 176 S.W.3d 231, 234–35 (Tex. Crim. App. 2005) (citing *State v. Mason*, 980 S.W.2d 635, 641 (Tex. Crim. App. 1998) ("The concept of element of an offense does not include every issue to which the State has the burden of

---

[22]Other states have relied upon this reasoning to hold that defendants are not entitled to a jury instruction on territorial jurisdiction. *See, e.g.*, *State v. Beverly*, 618 A.2d 1335, 1338 (Conn. 1993) ("[W]e agree with the decisions holding that the question of where a murder occurred generally is not an element of the offense"); *People v. Gayheart*, 776 N.W.2d 330, 339 n.5 (Mich. Ct. App. 2009) ("We think the better rule is *not* to treat territorial jurisdiction as an essential element of the crime because Michigan has no statute expressly defining territorial jurisdiction as an essential element of a criminal offense.").

proof; it does not include, for example, venue or jurisdiction." (internal citation omitted))).[23]

Some states have held that the issue of territorial jurisdiction is a matter of law for the court to decide, not the jury. *See Beverly*, 618 A.2d at 1338 (holding the question of territorial jurisdiction is to be decided by the court, as a defendant's right to a jury does not extend beyond the factual issues that are relevant to the ultimate question of guilt or innocence under the relevant statute); *Mitchell v. United States*, 569 A.2d 177, 180 (D.C.) (holding that the question of where an offense took place is "not one of fact for the jury"), *cert. denied*, 498 U.S. 986 (1990); *State v. Pugh*, 12 So.3d 1085, 1088 (La. Ct. App. 2009) ("A judge alone must decide the issue of territorial jurisdiction, but only if that issue is brought before the court before trial"); *State v. Aguilar*, 736 P.2d 620, 621 (Or. Ct. App. 1987) ("[T]he determination of jurisdiction is a matter of law for the court to decide"). In so holding, the Supreme Court of California observed:

> Treating jurisdiction as a threshold matter that should be challenged prior to trial affords substantial procedural safeguards for the defendant and serves the interests of judicial efficiency and economy. If only a jury could determine subject matter jurisdiction, a defendant would always be put through the expense, anxiety, and

---

[23]Cox points to *Doyle v. State*, 631 S.W.2d 732, 738 (Tex. Crim. App. 1982) (op. on reh'g), in which the court of criminal appeals concluded that the trial court's failure to include a culpable mental state in the application paragraph of the jury charge was reversible error because it eliminated an essential element of the charged crime. But Cox's reliance on *Doyle* is misplaced in light of the court's subsequent holding that jurisdiction is not an element of an offense. *Calton*, 176 S.W.3d at 234–35.

uncertainty of a trial and the only mechanism to challenge jurisdiction would be an appeal after the conclusion of trial. . . . By contrast, if the issue can be resolved by the court before trial, the defendant will have the opportunity to seek immediate review through a writ proceeding.

*People v. Betts*, 103 P.3d 883, 890 (Cal.), *cert. denied*, 545 U.S. 1133 (2005).

Many other states have determined that a jury instruction on territorial jurisdiction is warranted only where the factual basis for such jurisdiction is challenged by the defendant. For instance, the court of appeals of North Carolina has stated,

> [W]hen a defendant's challenge is not to the factual basis for jurisdiction but rather to the *theory* of jurisdiction relied upon by the State, the trial court is not required to give these instructions since the issue regarding whether the theory supports jurisdiction is a legal question for the court.

*State v. Lalinde*, 750 S.E.2d 868, 871 (N.C. Ct. App. 2013) (emphasis added) (internal quotations omitted); *see also State v. Willoughby*, 892 P.2d 1319, 1327 (Ariz. 1995) ("In the very rare case in which jurisdiction is legitimately in issue because of contradicting jurisdictional facts, Arizona's territorial jurisdiction must be established beyond a reasonable doubt by the jury."), *cert. denied*, 516 U.S. 1054 (1996); *People v. Cullen*, 695 P.2d 750, 751–52 (Colo. App. 1984) (holding that issue of jurisdiction must be submitted to the jury where it depends upon a resolution of disputed facts); *Lane v. State*, 388 So. 2d 1022, 1028 (Fla. 1980) (same); *McKinney v. Indiana*, 553 N.E.2d 860, 863–64 (Ind. Ct. App. 1990) (same); *State v. Liggins*, 524 N.W.2d 181, 184 (Iowa 1994) (same); *State v. Denofa*, 898 A.2d 523, 533 (N.J. 2006) (same); *People v. McLaughlin*, 606

24

N.E.2d 1357, 1359–60 (N.Y. 1992) (same); *Commonwealth v. Bighum*, 307 A.2d 255, 258 (Pa. 1973) (same); *State v. Beall*, 729 S.W.2d 270, 271 (Tenn. Crim. App. 1986) (same).

With regard to jurisdiction in civil cases, in Texas the issue of whether a court has subject matter jurisdiction is generally a question of law, although the supreme court has acknowledged that "in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact." *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002)). Here, however, we need not decide whether territorial jurisdiction is an issue that should be submitted to the jury because the facts underlying a jurisdictional determination in this case are not disputed. The parties do not dispute that the two sexual assaults that Zoe described did not occur in Texas. The facts related to the transport of Zoe from Fort Worth to Mexico are likewise largely undisputed. To the extent that a factual dispute existed as to whether Cox restrained Zoe so as to substantially interfere with her liberty, this question was submitted to and answered by the jury, and we have already addressed this in response to Cox's first point.

Because there was no issue of fact to be determined by the jury pertaining to the trial court's jurisdiction, and because the legislature has not recognized territorial jurisdiction as a defense or an affirmative defense warranting submission to the jury, we hold that the trial court did not err in declining to

instruct the jury as to the issue of jurisdiction.  We therefore overrule Cox's third point.

## D.  Tarrant County as the proper venue

In his fourth and fifth points, Cox argues that Tarrant County was not proven to be the proper venue for prosecution of the offenses of kidnapping and sexual assault, as alleged in counts one and two of the indictment.  Count one alleged that Cox abducted Zoe and count two[24] alleged that Cox, "in the county of Tarrant," caused the penetration of Zoe's mouth with his sexual organ.

Venue must be proven "by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue."  Tex. Code Crim. Proc. Ann. art. 13.17 (West 2015).  "Proof of venue may be established by direct or circumstantial evidence, and the jury may draw reasonable inferences from the evidence." *Thompson v. State*, 244 S.W.3d 357, 362 (Tex. App.—Tyler 2006, pet. dism'd).

In addressing Cox's first issue, we have held that there is sufficient evidence to support the jury's finding that Cox abducted Zoe in Tarrant County and took her to Mexico.  The jury was presented evidence that after contacting Zoe on a social messaging application, Cox traveled to Fort Worth, met her at her middle school, directed her not to speak and to pretend to be his little sister, and took her to the Fort Worth bus station where they caught a bus to El Paso.

---

[24]The original indictment contained a different count two that was later waived.  The count two referred to herein is the renumbered count two.

26

This evidence is sufficient to establish proper venue in Tarrant County with regard to the charge of kidnapping. We therefore overrule Cox's fourth point.

As for count two, the allegation of sexual assault, the code of criminal procedure specifically states that "[s]exual assault may be prosecuted . . . in the county where the victim is abducted." Tex. Code Crim. Proc. Ann. art. 13.15 (West 2015). As such, venue in Tarrant County was proper because Zoe was abducted in Tarrant County. *See, e.g.*, *Wangare v. State*, No. 07-14-00176-CR, 2015 WL 128567, at *1 (Tex. App.—Amarillo Jan. 7, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that Tarrant County was proper venue over aggravated sexual assault trial where victim was abducted in Tarrant County); *Maxwell v. State*, Nos. 02-12-00072-CR, 02-12-00073-CR, 02-12-00074-CR, 2013 WL 6729943, at *3 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (mem. op., not designated for publication) (holding that Parker County was proper venue of aggravated sexual assault trial where victim had been abducted in Parker County). We therefore overrule Cox's fifth point.

## Conclusion

Having overruled each of Cox's five points, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

27

DAUPHINOT, J., filed a concurring opinion.

PUBLISH

DELIVERED:  May 12, 2016