

# NUMBER 13-18-00642-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**DAVID NINO,**                                                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

## On appeal from the 148th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion by Chief Justice Contreras**

Appellant David Nino challenges his conviction for aggravated kidnapping, a first-degree felony. *See* TEX. PENAL CODE ANN. § 20.04(b). By two issues, appellant argues that there was insufficient evidence to support a finding that (1) he abducted the complainant; and (2) he used or exhibited a deadly weapon during the offense. We affirm.

## I. BACKGROUND

On June 15, 2017, appellant was indicted for aggravated kidnapping. *See id.* Specifically, the indictment alleged that appellant intentionally or knowingly abducted R.G. by restricting her movements without her consent, by confining her with intent to prevent her liberation, and by using or threatening to use deadly force, and that appellant used or exhibited a deadly weapon during the offense. The indictment also alleged appellant was a habitual felony offender.[1] *See id.* § 12.42(d). Appellant pleaded not guilty and waived his right to a jury trial.

At trial, R.G. testified that she went with appellant to his mother's house to smoke synthetic marijuana. According to R.G., appellant acted like a friend during the first two days, but his demeanor changed on the third day when R.G. told appellant she needed to leave to pick up her daughter. Appellant refused to allow R.G. to leave the house, took her cell phone away, pointed a knife at R.G. and threatened to "cut" and "slice" her and hurt her. Later that evening, as appellant parked in the driveway of the home after a trip to a corner store, R.G. ran down the street and flagged down Officer Curtis Volling of the Corpus Christi Police Department. R.G. testified appellant did not cut her with a knife or grab her.

Officer Volling testified that he encountered R.G. running down the street screaming for help. Volling got out of his patrol vehicle and had a conversation with R.G. A video recording of their interaction was admitted into evidence. In the video, R.G. is crying and tells Volling that: she was "being kidnapped"; appellant would not let her leave

---

[1] The State alleged that appellant had previously been convicted of possession of cocaine and sexual assault of a child.

his mother's house; appellant threatened to "cut" and "slice" her with a knife, among other threats; she was afraid for her safety; and she thought she was going to die. Volling testified he requested backup because he considered a knife to be a deadly weapon.

Volling located appellant in front of his mother's house. Appellant admitted R.G. had been with him but said R.G. "was acting crazy." After contacting appellant's mother, Volling retrieved R.G.'s purse and items of clothing from inside the home. The knife allegedly used by appellant to threaten R.G. was never recovered.

Appellant testified that he and R.G. were together for five days, not three. According to appellant, R.G. was smoking synthetic marijuana when she told appellant she wanted to sleep with him. Appellant testified R.G. went with him to his mother's house to continue to smoke synthetic marijuana. According to appellant, while at his mother's house, R.G. received text messages from her boyfriend indicating that he no longer wanted to be with her, and appellant told R.G. that she was welcome to stay at his mother's house if needed. On their final day together, appellant refused to give R.G. any more drugs and R.G. then threatened to leave. According to appellant, R.G. fabricated the story.

The trial court found appellant guilty of the offense. Appellant pleaded true to the enhancement allegations, *see id.* § 12.42(d) (increasing the punishment range for habitual felony offenders to "life, or for any term of not more than 99 years or less than 25 years"), and the trial court assessed punishment at life with the possibility of parole. The

3

trial court ordered that this sentence be served consecutively to another life sentence appellant received for a conviction for aggravated assault.[2] This appeal followed.

## II. DISCUSSION

By both of his issues, appellant challenges the sufficiency of the evidence supporting different elements of his conviction.

### A. Standard of Review

In a sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Chambers v. State*, 580 S.W.3d 149, 156 (Tex. Crim. App. 2019); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In our analysis, we defer to the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record contains conflicting inferences, we presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 326). The trier of fact is the sole judge of the weight and credibility of the evidence. *Cox v. State*, 497 S.W.3d 42, 47 (Tex. App.—Fort Worth 2016, pet. ref'd).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex.

---

[2] The conviction for aggravated assault was under trial court cause number 17FC-4694-E and appellate cause number 13-18-00641-CR, and the conviction for aggravated kidnapping was under trial court cause 17FC-1259-E.

4

Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240. A hypothetically correct jury charge would instruct the jury to find appellant guilty if he intentionally or knowingly abducted R.G while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. § 20.04(b); *Hines v. State*, 75 S.W.3d 444, 466 (Tex. Crim. App. 2002).

**B. Analysis**

**1. Restraint**

By his first issue, appellant challenges the sufficiency of the evidence supporting the finding that he abducted R.G. and argues that "it was not sufficiently shown that appellant ever restricted the victim's movements without her consent."

"Abduct" means to restrain a person with intent to prevent his or her liberation by: (1) secreting or holding him or her in a place where he or she is not likely to be found; or (2) using or threatening to use deadly force. *Griffin v. State*, 491 S.W.3d 771, 775 (Tex. Crim. App. 2016) (citing TEX. PENAL CODE ANN. § 20.01(2)). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with his or her liberty, by moving him or her from one place to another or by confining him or her. *Id.* (citing TEX. PENAL CODE ANN. § 20.01(1)). Restraint is without consent if it is accomplished by force, intimidation, or deception. *Id.* Further, the penal code does not define "confine," and terms not defined in a statute are given their plain and ordinary meaning. *Cox v. State*, 497 S.W.3d 42, 48 (Tex. App.—Fort Worth 2016, pet. ref'd). Thus, "confine" means

5

"to hold within bounds," "to restrain from exceeding boundaries," or "to keep in narrow quarters: imprison." *Id.*; *see Holmes v. State*, 873 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no pet.) (defining "confine" as "to shut up, imprison, immure, put or keep in detention, to relegate to certain limits"). Finally, "deadly force," in the context of kidnapping, is either (1) force intended or known by the actor to cause death or serious bodily injury or (2) force capable of causing death or serious bodily injury in the manner of its use or intended use. *Kenny v. State*, 292 S.W.3d 89, 98 (Tex. App.—Houston [14th Dist.] 2007, pet. stricken); *see Ferrel v. State*, 55 S.W.3d 586, 591–92 (Tex. Crim. App. 2001).

The evidence showed that R.G. initially accompanied appellant voluntarily to his home to consume drugs. According to R.G., on their third day together, she told appellant she needed to leave to pick up her daughter, but appellant refused to allow R.G. to leave appellant's house, took her cell phone away, and pointed a knife at R.G. and threatened to "cut" and "slice" her up and hurt her.[3] This evidence supports a finding that appellant restrained R.G. against her will by using or threatening to use deadly force and that he restricted R.G.'s movements by confining her to his mother's house. *See* TEX. PENAL CODE ANN. § 20.01; *Hines*, 75 S.W.3d at 447–48 ("[T]here is nothing in the Texas statute that even *suggests* that it is necessary for the State to prove that a defendant moved his victim a certain distance, or that he held him [or her] a specific length of time before he can be found guilty of kidnapping."); *Griffin*, 491 S.W.3d at 775; *Cox*, 497 S.W.3d at 48; *West v. State*, 406 S.W.3d 748, 757 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (noting that there is no particular way to prove confinement); *Kenny*, 292 S.W.3d at 98

---

[3] These threats were accompanied by explicit language that we have omitted.

6

(noting that threats can be communicated by actions, words, or deeds, including acts amounting to an offer to use future force).

Appellant is correct that there is evidence that R.G. initially accompanied him to his mother's house voluntarily; however, there is also evidence that appellant later restrained R.G. against her will and threatened her with a knife while doing so. We must presume the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326; *Cox*, 497 S.W.3d at 48. Looking at all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact was free to find beyond a reasonable doubt that appellant abducted R.G. *See Hines*, 75 S.W.3d at 447–48; *Griffin*, 491 S.W.3d at 775; *Cox*, 497 S.W.3d at 48; *West*, 406 S.W.3d at 757–58.

Appellant also points to his testimony at trial and argues that his version of events was "closer to reality than what the victim claimed." Appellant testified at trial that R.G. got upset with him after he refused to give her any more synthetic marijuana to smoke and that R.G. made the whole story up. As noted, the trier of fact is the sole judge of weight and credibility of the evidence. *Cox*, 497 S.W.3d at 47. The trial court could have reasonably disbelieved appellant's version of events and believed R.G.'s version. We must presume that the trier of fact resolved any such conflicts in favor of the prosecution and defer to that resolution. *See Padilla*, 326 S.W.3d at 200. Accordingly, we reject this argument.

We overrule appellant's first issue.

**2. Deadly Weapon**

By his second issue, appellant argues that there was insufficient evidence that he used a deadly weapon during the offense.

"A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." *Hines*, 75 S.W.3d at 446 (citing TEX. PENAL CODE ANN. § 20.04(b)). A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

Because not all knives are manifestly designed, made, or adapted for the purpose of inflicting serious bodily injury or death, the evidence is sufficient to support the finding only if the trier of fact could have reasonably found that appellant used the knife in such a way, or intended to use the knife in such a way, that it was capable of causing serious bodily injury or death. *See id.* § 1.07(a)(17)(B) (defining "deadly weapon"); *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017); *Davis v. State*, 533 S.W.3d 498, 508 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd). "In determining whether a weapon is deadly in its manner of use or intended manner of use, the defendant need not have actually inflicted harm on the victim." *Johnson*, 509 S.W.3d at 323; *see Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. 1980). Instead, the most important factor is the manner of use. *Dominique*, 598 S.W.2d at 286 (finding scissors to be a deadly

8

weapon); *Quintana v. State*, 777 S.W.2d 474, 478 (Tex. App.—Corpus Christi–Edinburg 1989, pet. ref'd) (finding a dustpan to be a deadly weapon).

To determine whether a specific object is a deadly weapon, a jury may consider (1) the physical proximity between the alleged victim and the object, (2) any threats or words used by the accused, (3) the size and shape of the object, (4) the potential of the object to inflict death or serious injury, and (5) the manner in which the accused allegedly used the object. *Leal v. State*, 527 S.W.3d 345, 348 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). Both verbal threats and any threatening actions of the assailant must be considered. *See Johnson*, 509 S.W.3d at 323–24 & n.5.

Here, the size and shape of the knife is unknown; R.G. did not provide testimony specifying the dimensions of the knife and the knife was never found. However, it is not necessary for the weapon to be actually introduced into the evidence in order to support a deadly weapon finding. *See Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982); *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd). Furthermore, a threat communicated by a defendant while displaying a weapon can support a finding that the weapon was capable of death or serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (noting that "objects used to threaten deadly force are in fact deadly weapons"). There was evidence before the court that appellant pointed the knife at R.G. and threatened to "cut" her, "slice" her up, and hurt her and that R.G. was afraid for her life. Given that appellant pointed a knife at R.G., and that he threatened her while doing so, we conclude that there was sufficient evidence to support the deadly weapon finding. *See Johnson*, 509 S.W.3d at 323–24 & n.5; *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); *McCain*, 22 S.W3d

at 503; *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991); *Acosta v. State*, 179 S.W. 870, 871 (Tex. Crim. App. 1915) ("We are inclined to believe that all mankind know that death can be inflicted by a razor in the hands of a grown man.").

We overrule appellant's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of April, 2020.

10